IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SANDRA SHANTA, individually
and as legal and physical guardian
of MURRAY WALT CHICO,**

      **Plaintiff,**

vs.                                        **No. CIV 03-0537 RB/RHS**

**UNITED STATES OF AMERICA,
and DORIS HUSKEY, individually
or as an employee of the government,
and RAINDANCER YOUTH SERVICES,
INC., a Utah Corporation,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Doris Huskey's Motion for Summary Judgment (Doc. 71), filed on June 11, 2004, and Plaintiff's Motion to Supplement Record (Doc. 198), filed on September 9, 2004. Jurisdiction arises under 28 U.S.C. § 1331. Having reviewed the submissions of the parties and the relevant law, I find that the motion to supplement the record should be granted and that the motion for summary judgment should be denied.

**I. Background.**

Murray Chico is a thirteen-year-old member of the Mescalero Apache Tribe. On March 18, 2001, at the age of ten, Murray was attacked by dogs and seriously injured. The dogs belonged to Doris Huskey ("Huskey"), a treatment foster parent affiliated with Raindancer Youth Services, Inc. ("Raindancer"). At the time of the attack, Murray was in the midst of a 72-hour pre-placement visit with Huskey at her home in Ruidoso, New Mexico. Mary Kihega, a Bureau of Indian Affairs ("BIA")

social worker, in consultation with Raindancer, had temporarily placed Murray with Huskey pending Murray's permanent placement with Plaintiff Shanta. After the attack, the Mescalero Tribal Council permanently placed Murray with Shanta.

In her Third Amendment Complaint, Shanta asserts negligence claims against the United States, Raindancer, and Huskey. With respect to Huskey, Shanta alleges negligence, negligence per se, and gross negligence. Specifically, she alleges that Huskey acted wantonly, recklessly, and with gross negligence by placing Murray in a yard with two large, unfamiliar dogs, failing to recognize the danger created by placing Murray with the dogs, and by failing to ensure that reasonable precautions were taken to ensure Murray's safety. Huskey has moved for summary judgment on the ground that she is shielded from liability by the Volunteer Protection Act, 42 U.S.C. §§ 14501-14505 ("VPA").

**II.     Facts.**

On October 9, 1998, at the age of seven, Murray was made a ward of the tribal court and placed in the custody of the BIA. (Pl. Ex. A.) Due to the effects of his traumatic history, an evaluating psychologist recommended that Murray be placed in a treatment foster home. (Pl. Ex. B.) The BIA uses the child placement services of Raindancer, a non-profit organization, to place behaviorally and emotionally disabled Native American children in treatment foster homes. (Def. Ex. A.) Raindancer trained Huskey as a treatment, or teaching, foster parent. (Def. Ex. B.) Although Murray was to be her first placement, Huskey was licensed to maintain a treatment foster care home. (*Id.*)

In February 2001, Raindancer recommended that Murray be placed with Huskey. (Def. Ex. C.) On March 2-4, 2001, Murray visited the Huskey home for 48 hours without incident. (Pl. Ex.

P.)  On March 17, 2001, Huskey picked up Murray for a 72-hour pre-placement visit.  (*Id*.)  Assuming everything went well with the 72-hour visit, Murray was going to live in Huskey's home as a treatment foster child.  (*Id*.)

On March 18, 2001, Murray was attacked by one of Huskey's two, large, mixed-breed dogs.  (Pl. Exs. O, P.)  The dogs had previously attacked a friend of Huskey's husband and ripped off his sleeve as the friend reached into the backyard to leave a note.  (Pl. Ex. P.)  On the second day of the 72-hour pre-placement visit, Huskey allowed Murray to brush the dogs while she stepped into a backyard workshop.  (Pl. Ex. O.)  Huskey heard a sound and emerged from the shed to find a dog on top of Murray, with its jaws at his throat.  (*Id*.)  Murray suffered life threatening, permanent injuries to his throat, larynx, and vocal cords.  (Pl. Exs. O, P and S.)  Murray was bleeding profusely and had to be airlifted to Albuquerque for medical treatment.  (*Id.*)

The Raindancer Teaching Home Parents Training Guide states that treatment foster care parents receive much better pay than foster parents and that monetary income is generally considered one of the motivating factors for treatment foster parents.  (Pl. Ex. D.)  The Teaching Home Parents Handbook contains detailed billing instructions.  (Pl. Ex. G.)  The Youth Care Agreement between Raindancer and Huskey provides that Huskey was an independent contractor responsible for her own income tax withholding.  (Pl. Ex. L.)  Huskey agreed to indemnify and hold harmless Raindancer for taxes and penalties assessed by the IRS.  (*Id*.)  Huskey executed an IRS, W-9 Request for Taxpayer Identification Number and Certification form for Raindancer.  (Pl. Ex. M.)  Huskey was to receive $82.87 per day for Murray's placement, or $30,247.55 per year.  (Pl. Ex. F.)

**III.     Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

**IV.   Discussion.**

    **A.  Plaintiff's Motion to Supplement Record.**

Shanta moves to supplement the record with the deposition testimony of Richard Laws, the Clinical Director of Raindancer. (Def. Ex. A.)  Mr. Laws testified that Raindancer subcontracts with treatment foster parents to provide services for a particular child. (Pl. Ex. A.)  Raindancer pays treatment foster parents a certain amount for each day that the child stays in their home. (Pl. Ex. A.) Treatment foster parents are eligible to receive payment for 72-hour pre-placement visits. (Pl. Ex. A.)  At the time that Murray was placed in the Huskey home, the daily amount was $82.87 per treatment foster child. (Pl. Ex. A.)  This evidence is relevant to the issue of whether Huskey qualifies as a volunteer.  Accordingly, the motion to supplement the record will be granted.

    **B.  Huskey's Motion for Summary Judgment.**

Huskey argues that the Volunteer Protection Act ("VPA"), 42 U.S.C. §§ 14501-14550, shields her from liability. The VPA defines the term "volunteer" as:

> "[A]n individual performing services for a nonprofit organization or a governmental entity who does not receive - (A) compensation (other than reasonable reimbursement or allowance for expenses actually incurred); or (B) any other thing of value in lieu of compensation, in excess of $500 per year and such term includes a volunteer serving as a director, officer, trustee, or direct service volunteer."

42 U.S.C. § 14505(6).

The evidence submitted by Shanta demonstrates that Huskey did not qualify as a volunteer within the meaning of the VPA.  Huskey was to receive $82.87 for each day that Murray lived in her home.  Huskey realized that she was eligible to receive monetary compensation for her services. Huskey executed documents concerning her tax status and received instructions for submitting her

bills. Huskey does not qualify as a volunteer as that term is defined by the VPA.

In addition, Shanta has submitted evidence that creates a factual issue as to whether Huskey could be liable for gross negligence. The VPA does not apply to harm caused by "gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer." 42 U.S.C. § 14503(a)(3). Huskey testified that she was aware of a prior incident where her dogs attacked someone in her backyard. Under these circumstances, Huskey is not entitled to summary judgment on her claim that she is entitled to the protections of the VPA.

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Supplement Record (Doc. 198), filed on September 9, 2004, is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Doris Huskey's Motion for Summary Judgment (Doc. 71), filed on June 11, 2004, is **DENIED.**

*/s/ Robert Brack*

———————————————————————
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**