IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SANDRA SHANTA, individually
and as legal and physical guardian
of MURRAY WALT CHICO,**

      **Plaintiff,**

vs.                                                        No. CIV 03-0537 RB/RHS

**UNITED STATES OF AMERICA,
and DORIS HUSKEY, individually
or as an employee of the government,
and RAINDANCER YOUTH SERVICES,
INC., a Utah Corporation,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant United States' Motion to Dismiss or, in the Alternative, for Summary Judgment as to Direct Claim for Negligence Against the United States (Doc. 208), filed on September 29, 2004. Jurisdiction arises under 28 U.S.C. § 1331. Having reviewed the submissions of the parties and the relevant law, I find that this motion should be construed as a motion for summary judgment and that the motion should be granted.

**I. Background.**

Murray Chico is a thirteen-year-old member of the Mescalero Apache Tribe. On March 18, 2001, at the age of ten, Murray was attacked by dogs and seriously injured. The dogs belonged to Doris Huskey, a treatment foster parent affiliated with Raindancer Youth Services, Inc. ("Raindancer"). At the time of the attack, Murray was in the midst of a 72-hour pre-placement visit with Huskey at her home in Ruidoso, New Mexico. Mary Kihega ("Kihega"), a Bureau of Indian Affairs ("BIA") social worker, in consultation with Raindancer, had temporarily placed Murray with

Huskey pending Murray's permanent placement with Plaintiff Shanta. After the attack, the Mescalero Tribal Council permanently placed Murray with Shanta.

In her Third Amendment Complaint,[1] Shanta asserts negligence claims against the United States, Raindancer, and Huskey. In Count I, she alleges negligence, negligence per se, and gross negligence for the acts or omissions of Kihega and/or Raindancer as agents of the United States. Specifically, Shanta alleges that Kihega and/or Raindancer were agents of the United States and that they were acting within the course and scope of their employment or agency with the United States by: (a) placing Murray in an unlicensed treatment foster care home; (b) placing Murray in a foster home that had not been thoroughly or adequately investigated; (c) placing Murray with Huskey without permission or adequate reason for that placement; (d) failing to conduct an adequate home study before placing Murray with Huskey; (e) failing to comply with the Indian Child Welfare Act, 25 U.S.C. § 1901, et seq.; and (f) failing to place Murray in the least restrictive setting which would have most approximated a family, would have met Murray's special needs, would have been thoroughly investigated, and would have been the appropriate Indian foster home.

The Government has moved to dismiss or for summary judgment on the direct claim of negligence against the United States on the ground that the governmental acts or omissions of Kihega were discretionary in nature, and thus are exempt from liability under the discretionary function exception to the Federal Tort Claims Act ("FTCA").

**II.    Facts.**

Murray has been a ward of the tribal court and in the custody of the BIA since 1998. (Pl. Ex.

---

[1] Shanta's motion to file a fourth amended complaint will be addressed by separate order. The motion to dismiss, and this opinion, address the third amended complaint.

I.) Murray's special needs required that he be placed in treatment foster care. (Pl. Ex. K.) The BIA defers to the New Mexico Children, Youth and Family Services Department ("CYFD") and its licensed private agencies for primary responsibility in providing eligible Native American Children with residential treatment and treatment foster care. (Def. Ex. A.) Due to the limited resources that BIA has available for social services and in consideration of the respective roles of service providers available within the state, BIA defers as a matter of social, economic and political policy to the primary role and expertise of the CYFD and its licensed private agencies, such as Raindancer, in providing social services in the area of treatment foster homes. (*Id.*) CYFD certified Raindancer to provide treatment foster care homes to children within the state. (Def. Ex. B.) After training Huskey and conducting a home safety study, Raindancer certified Huskey as a treatment foster parent as of January 1, 2001. (Def. Ex. C; Huskey Depo. at 16-21; Bryant Depo. at 119-120.)

Upon his release from a residential treatment center, Raindancer considered what treatment foster homes were available and appropriate for Murray. (Bryant Depo. 230-231.) Raindancer recommended Huskey's home. (*Id.*) Although Murray was to be her first placement, Huskey was licensed to maintain a treatment foster care home. (Def. Ex. C.) Kihega approved Raindancer's recommendation that Murray be placed with Huskey. (Kihega Depo. 21; Bryant Depo. at 155; 231.)

On March 2-4, 2001, Murray visited the Huskey home for 48 hours without incident. (Def. Ex. D.) On March 17, 2001, Huskey picked up Murray for a 72-hour pre-placement visit. (Huskey Depo at 59-60.) Assuming everything went well with the 72-hour visit, Murray was going to live in Huskey's home as a treatment foster child. (*Id.*) The following day, Murray was attacked by the dogs. (Third Am. Compl.)

**III.     Standard.**

The applicability of an exception to the FTCA's waiver of immunity presents a jurisdictional issue. *Aragon v. United States*, 146 F. 3d 819, 823 (10th Cir. 1998). Rule 12(b)(1)of the Federal Rules of Civil Procedure allows dismissal of a complaint for "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). When a party challenges the allegations supporting subject matter jurisdiction, the court has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). In such a case, reference to evidence outside the pleadings does not necessarily convert the motion to a summary judgment motion under FED. R. CIV. P. 56. *Holt*, 46 F.3d at 1003.

However, where jurisdictional issues raised in a Rule 12(b)(1) motion are intertwined with the merits of the case, the motion should be resolved under Rule 56. *Holt*, 46 F.3d at 1003. In analyzing whether jurisdiction is intertwined with the merits of a particular dispute, "the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002). The applicability of the FTCA's discretionary function exception is a jurisdictional question that is intertwined with the merits of the case. *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999). Therefore, the summary judgment standard will be applied.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id*.

**IV.     Discussion.**

The FTCA waives sovereign immunity for "the negligent or wrongful act or omission" of a federal employee "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The United States can be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Excluded from this broad waiver of immunity, however, are claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Accordingly, the exception can apply even if the government employee was negligent. *Aragon*, 146 F.3d at 822.

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). The exception imposes a "jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction." *Aragon*, 146 F.3d at 823.

The Supreme Court has devised a two-part test to determine the applicability of the discretionary function exception. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The first prong of the *Berkovitz* test inquires whether a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Id.*, 486 U.S. at 536. In order to qualify as

"prescribed," the course of action must be "specific and mandatory." *Aragon*, 146 F.3d at 823. If a federal statute, regulation, or policy imposes specific or mandatory directives, conduct pursuant to that directive is not discretionary since "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. However, if the course of action involves a matter of choice or judgment, then the action is discretionary, and the inquiry proceeds to the second prong of the *Berkovitz* test. *Id.*; *see also Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002).

The second prong of the *Berkovitz* test inquires whether the exercise of judgment or choice at issue "is the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. Only governmental actions and decisions based on considerations of public policy are protected by the exception. *Id*, 486 U.S. at 537. The goal of this inquiry is to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 536-37 (quoting *Varig Airlines*, 467 U.S. at 814). The subjective intent of the employee is irrelevant; the question is whether the nature of the actions implicate public policy concerns, or are susceptible to policy analysis. *Lopez v. United States*, 376 F.3d 1055, 1057 (10th Cir. 2004) (quoting *United States v. Gaubert,* 499 U.S. 315, 325 (1991)).

Shanta contends that the Indian Child Welfare Act ("ICWA"), BIA regulations and administrative policy removed all discretion from Kihega to place Murray with Huskey. The ICWA requires pre-adoptive or foster placement of Indian children "in the least restrictive setting which most approximates a family and in which his special needs, if any, may be met." 25 U.S.C. § 1915(a). This language invokes the exercise of judgment in determining what is the least restrictive setting, what most approximates a family, what are the child's special needs, and how to meet special needs. Shanta

6

must demonstrate that the decision to place Murray with Huskey "involved no element of choice." *Elder*, 312 F.3d at 1177. Section 1915(a) does not support Shanta because it does not eliminate all elements of judgment and discretion from the BIA in approving a recommended placement.

Shanta also relies on Section 1915(b) of the ICWA, which provides:

> In any foster care or pre-adoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with –
> (i) a member of the Indian child's extended family;
> (ii) a foster home licensed, approved, or specified by the Indian child's tribe;
> (iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or
> (iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.

25 U.S.C. § 1915(b).

The language, "in the absence of good cause to the contrary," expressly provides discretion for the judgment of the BIA social worker in determining what is good cause to the contrary. The Tenth Circuit found similar language ("as may be practicable") as "a prime example of discretionary language, which gave federal agencies a choice or judgment on what action to take, *if any*." *Aragon*, 146 F.3d at 824 (emphasis supplied). I, therefore, conclude that the statutory language advanced by Shanta is neither specific or mandatory within the meaning of the first part of the *Berkovitz* test.

Shanta's reliance on BIA regulations is similarly unavailing. Shanta cites to 25 C.F.R. § 20.507, which provides: "If a child needs foster care, the social services worker must select care that meets the physical, behavioral, and emotional needs of the child." The language of the regulation requires the exercise of judgment and choice by the social worker in determining appropriate care based on the child's needs. Such general goals do not "specifically describe a course of action for an

7

employee to follow." *Berkovitz*, 486 U.S. at 536.

Shanta's reliance on BIA Manual, 66 BIAM 10.1 (Pl. Ex. A.), is also misplaced. The BIA Manual provides that the BIA policy is to "protect the best interests of Native American children and to promote the stability and security of Indian tribes and families by implementing the requirements of the Indian Child Welfare Act." (Pl. Ex. A.) The BIA Manual sets out the goals of the BIA Social Services Bureau. (*Id*.) For instance, it provides that BIA social workers should "advocate awareness of the rights of children and their families." (*Id*.) Such statements establish that the Manual was intended to provide guidance to the agency and is not entitled to the force and effect of law. *See Aragon*, 146 F.3d at 824-825.

The statute, regulations, and policies relied on by Shanta delegate extensive discretion to BIA social workers such as Kihega. BIA social workers must exercise judgment and discretion in order to determine treatment foster placements for Native American children in need of such care. Because no statute, regulation, or policy specifically prescribed a course of action for Kihega to follow, the challenged conduct was discretionary under the first part of the *Berkovitz* test.[2]

The second part of the *Berkovitz* test requires a determination as to whether the challenged conduct is "based on considerations of public policy." *Berkovitz* 486 U.S. at 537. The pertinent inquiry is whether the decision "implicates the exercise of a policy judgment of a social, economic, or political nature." *United States v. Duke*, 131 F.3d 1407, 1411 (10th Cir. 1997). When established governmental policy allows a government agent to exercise discretion, it is presumed that the agent's

---

[2] Shanta argues that Kihega was somehow bound by the provisions of the New Mexico Administrative Code relating to foster care services for children. The relevant inquiry is whether there were any federal statutes or regulations mandating specific conduct. *Aragon v. United States*, 950 F.Supp. 321, 326 (D. N. M. 1996). State law is irrelevant to this analysis. *Id*.

8

actions are grounded in policy when exercising that discretion. *Gaubert*, 499 U.S. at 324.

In working with and relying on Raindancer as the state licensed treatment foster care agency, Kihega was following the policy direction in BIA regulations to coordinate with state and local social service agencies in the furnishing of services to Native American children and to avoid duplication of services. *See* 25 C.F.R. §§ 20.102; 20.200. Due to the limited resources that BIA has available for social services and in consideration of the respective roles of service providers and other funding available within the state, BIA defers as a matter of social, economic and political policy to the primary role and expertise of the State and its licensed private agencies, such as Raindancer, in providing social services in the area of treatment foster care homes. (Def. Ex. A.)

By relying on Raindancer's services in evaluating the appropriateness of the placement of Murray with Huskey, Kihega was following the policy of BIA. Kihega's discretionary actions here were based on public policy considerations and are protected by the discretionary function exception to the FTCA. The discretionary function exception immunizes the United States from liability for the alleged negligence of Kihega.

**WHEREFORE,**

**IT IS ORDERED** that Defendant United States' Motion to Dismiss or, in the Alternative, for Summary Judgment as to Direct Claim for Negligence Against the United States (Doc. 208), filed on September 29, 2004, is **GRANTED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

9