IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

*FILED*

*UNITED STATES DISTRICT COURT*
*ALBUQUERQUE, NEW MEXICO*

*MAR 1 1 2005*

*MATTHEW J. DYKMAN*

*CLERK*

SANDRA SHANTA, as Legal and
Physical Guardian of MURRAY WALT
CHICO,

        Plaintiff,

vs.

                              Civ. No. 03-537 RB/RHS

THE UNITED STATES OF AMERICA,
DORIS HUSKEY, Individually and
RAINDANCER YOUTH SERVICES,
INC., a Utah corporation, Individually
or as an employee or agent of the
government.

        Defendants.

## REPORT AND RECOMMENDATION

      The undersigned is the assigned United States Magistrate Judge for the above captioned

cause.  On March 8, 2005, at 8:30 a.m. I held a Fairness Hearing to consider the proposed

settlement by and between the parties.  The hearing was attended by Randi McGinn, counsel for

Plaintiff, John Zavitz, Assistant United States Attorney, James R. Wood and Jane Laflin, counsel

for Raindancer Youth Services and Doris Huskey, Sandra Shanta on behalf of the minor child,

and Kimball R. Udall, the Court guardian ad litem.  A record was made and I am transmitting a

copy as an exhibit to this Report and Recommendation.

      This lawsuit was brought for personal injuries suffered by Murray Walt Chico, a minor

child, arising out of an incident which occurred on or about March 18, 2001, in Ruidoso, New



Mexico. On that date, the minor child was severely injured by a dog owned by Defendant Doris Huskey. Raindancer Youth Services, Inc., was the treatment foster-care placement service and the United States Government was the legal guardian of the minor child. This Court has subsequently ruled that the government is immune from liability in the case. The remaining defendants denied liability and have highly contested the causal connection between the medical bills and the incident which is the basis for the lawsuit. Counsel for the Plaintiff has also researched and weighed the likelihood of success of an appeal from the Court's decision that the government is immune from liability and counsel have determined that given the present status of the law in the Tenth Circuit, the decision of dismissal based on immunity will most likely be affirmed. Having weighed the likelihood of success in prosecution or defense of the claim, the respective parties have reached a proposed settlement which is more fully set forth in the Report of the Guardian Ad Litem [docket no. 238]. For the Court's convenience. I have attached a copy of that report as Exhibit 2. I am also attaching a transcript of the Fairness Hearing as Exhibit 3.

At the fairness hearing, I conducted a thorough discussion of the proposed settlement as it may apply to the best interests of the minor child. The majority of the proceeds received by the minor child will be used to purchase an annuity which is more fully described as Exhibit A to the Report of the Guardian Ad Litem. The purchase of this annuity is fair and appropriate considering the best interests of the minor child and the annuity benefits will be provided by GE Capital Assurance Company which maintains an A+ superior rating with A.M. Best Company, AA rating with Standard & Poor, and Aa2 Rating with Moody.

The Court has raised its concern relative to the use of Charles P. Reynolds, Attorney at Law, as trustee instead of a banking institution which would be insured and bonded. Mr.

-2-

Reynolds is insured for his work as a fiduciary and trustee (See Ms. McGinn's letter of March 8, 2005, attached hereto as Exhibit 1). Apparently, State National Bank in Ruidoso, New Mexico, would accept the special needs trust (the assets of which will be approximately $60,000), however their fee schedule is based on a trust with a $1,000,000 minimum. This means that the fee schedule would be $1,500 per year and there would be transaction fees as the funds were allocated and invested. The parties would like to use Charles P. Reynolds, Attorney at Law, as trustee with the understanding that his fees would be billed at the rate of $110.00 per hour and it is contemplated that they would be less than the amount quoted by the banking institution. The parties believe that Mr. Reynolds will be more accessible and take a personal interest in the application of the trust proceeds to the best interests of the minor child. They are concerned that there is no trust department actually in the State National Bank in Ruidoso and a trust officer travels from Texas on an infrequent basis. I raised questions addressing my concern that perhaps Mr. Reynolds would find it difficult to say no to any disbursement request. For example, it has been my experience from other cases that legal custodians sometimes ask for a distribution from a special needs trust to be used to buy a family vehicle, improve the family home, take a vacation, or purchase a TV. All of these types of distributions are arguably in the best interests of the minor child but may cross over the line between the child's actual needs and the family's needs and desires. Counsel told me that Mr. Reynolds is a very conservative individual and that he can be trusted to weigh requests for distributions of money. By way of example, at the fairness hearing, counsel for the Plaintiff asked that the special needs trust reimburse the Shantas for their lost wages incurred while attending court proceedings at the rate of $9.00 per hour. I did not think this was an appropriate request because I do not believe the

-3-

child should be required to pay the legal custodian's lost wage claim. There are other requests

pending from the legal custodian concerning the replacement of a bunk bed which the minor

child apparently destroyed in a fit of anger, the reimbursement for co-pay on medical services

received by the minor child, and the proposed purchase of certain dancing outfits to be used by

the child to enhance his cultural contacts with his native tribe. While some of these requests may

be reasonable and supportable, others are not and I asked if Mr. Reynolds was strong enough to

sort these requests out and make the appropriate decisions. Counsel indicated that they all

believed that he could make these decisions appropriately. It is my conclusion that Mr. Reynolds

would make an appropriate trustee and that the concern that the banking institution would not

take the necessary level of personal interest, particularly because the bank does not maintain a

trust department in Ruidoso.

I read the proposed Irrevocable Indenture of Trust which is attached as Exhibit B to the

Report of the Guardian Ad Litem. I believe that Paragraph 10, Page 6, should include language

to reflect that any amendment of the trust will not be effective until it is approved by the written

order of this Court. I articulated this concern to counsel and they all agreed that it would be

appropriate to add language which requires Court approval for any amendment. I also asked

counsel what would happen in the event Mr. Reynolds becomes disabled or unable to function as

a trustee. Who would have access to the money and how would it be distributed? After a

discussion on the record, it was agreed that the most reasonable approach would be to have the

parties come back to Court and ask for the appointment of a successor trustee. Finally, I asked

what would happen when the child turns 18 and becomes a legal adult. The child's birthday is

January 6, 1991, and he is 4 years away from emancipation. By all accounts, the child

-4-

demonstrates enormous behavioral problems and I am worried that on his 18th birthday he would

have the legal ability to go to the bank and collect the money in the trust. When I put this

concern before counsel, Ms. McGinn volunteered to review the child's circumstances shortly

before the date of legal emancipation and, if appropriate, file the appropriate petition for

conservatorship in either the state district court or the tribal court.

Thank you for sending me this case for a fairness hearing. All of the attorneys involved

were very cooperative and professional and willing to discuss the questions and issues that I

wanted to address. A special thanks is due Mr. Udall who has spent an enormous amount of time

and energy in addressing the best interests of this minor child. He is receiving a flat fee of

$5,000 which in no way reflects the time he has expended and responsibility he has assumed in

acting as the guardian ad litem. I made a finding on the record that Mr. Udall was serving as the

eyes and ears of the Court. I also advised him that at such time as the proposed settlement is

approved by the Court, he may submit a form of order discharging him as guardian ad litem.

It is therefore my respectful recommendation that the proposed settlement be approved

with the following modifications:

1. The trust may not be amended or modified without the express written consent and

order of the Court.

2. Prior to the minor child reaching the age of 18 years, Ms. McGinn will review his

circumstances and make a determination as to whether or not a conservatorship is appropriate for

him as an adult. If upon her review she believes that a conservatorship is appropriate, she will

institute the filing of the same in a court of competent jurisdiction within the state court system

or the tribal court.

-5-

3. Ms. McGinn's oral request that the legal guardians receive an additional $1,000 to reimburse them for lost wages incurred in attending Court hearings and other associated costs be denied.

4. That the trust purchase a copy of the transcript of the fairness hearing and that the same be maintained in the possession of Kim Udall as guardian ad litem. It is the thought of the undersigned that this transcript should be available for the minor child to read and review at such time as the child is competent and able. This would allow the child to determine what was done at the fairness hearing and how his bests interests were addressed and considered and the cost of the transcript should be paid by the trust.

Robert H. Scott                3-11-05

ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE

**THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE...**